Filed 3/25/22  P. v. Grajeda CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL G. GRAJEDA,<br><br>    Defendant and<br>    Appellant. | B309112<br><br>(Los Angeles County<br>Super. Ct. No. A019866) |

APPEAL from an order of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Daniel Grajeda appeals the denial of his petition for resentencing under Penal Code section 1170.95.[1]  He contends the trial court erred in concluding that he was a major participant and acted with reckless indifference during an armed robbery that turned deadly.  We conclude that substantial evidence supports the trial court's decision and affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

**The Crime**

### *Prosecution Evidence*

At 9:00 p.m. on March 28, 1979, appellant called Alfred Armijo to discuss buying heroin.  Armijo was asleep at the time, but his girlfriend, Debbie, answered the phone and invited appellant to come over.  Appellant and another man, John Stinson, arrived at Armijo's home at 10:00 p.m.  Debbie answered the door but would not allow appellant to come in until Stinson returned to the car.

As Debbie opened the door, Armijo awoke and ran to the door.  Appellant, who had one foot in the doorway, drew a gun and pointed it at Armijo and Debbie as they tried to close the door.  Appellant said, "Stand back.  This is a holdup," and called Stinson for help.  Stinson arrived at the door with his own gun, and he and appellant forced their way into the living room.  A struggle ensued. Appellant fired his gun once and said, "Give up the dope right now."

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The facts and procedural history of appellant's crime are drawn from our opinion in appellant's direct appeal, *People v. Grajeda* (Apr. 8, 1983, 2d Crim. No. 41516) [nonpub. opn.].

Later—it is unclear how much later—appellant and Stinson led Armijo and Debbie into the street at gunpoint. Several neighbors, including Armijo's brother, Steve, came out to see what was happening. Steve, who knew appellant, asked him why he was doing this. Appellant replied, "All we want is the dope. That's all." Appellant then said, "Let's go. The police are coming." Stinson then said, "Should I shoot him? Should I shoot him?" Appellant did not reply. Stinson, who was holding onto Armijo, shot and killed him. Appellant and Stinson then ran to a car and drove away.

### Defense Evidence

Appellant testified that he and another person, whom he refused to identify but said was not Stinson, went to Armijo's house to trade some guns for heroin. Appellant only wanted to buy drugs, not commit a robbery. When Debbie let appellant into the house, Armijo "freaked out" and jumped on appellant. Appellant's gun went off during the ensuing struggle.

Appellant's unnamed companion then "crashed in the door" and joined the fight. Later—again, it is unclear how much later—appellant, his companion, Armijo, and Debbie all went outside to go to Steve's house across the street, where they planned to look for heroin. Appellant heard a gunshot from his companion and saw Armijo "laid out." Appellant and his companion then jumped into their car and fled.

### Charges and Conviction

Appellant and Stinson were charged with murder (§ 187), burglary (§ 459), attempted robbery (§§ 211, 664), and assault by means of force likely to produce great bodily injury (§ 245). The information further alleged the special circumstance that the murder was committed during the commission or attempted

3

commission of a robbery (§ 190.2, subd. (a)(17)), and that appellant and Stinson each personally used a handgun while committing all four crimes (§ 12022.5).

Appellant and Stinson were tried separately. At appellant's first trial, the jury found him guilty of assault by means of force likely to produce great bodily injury and found the related gun enhancement true. The jury hung on the remaining counts and allegations, and mistrial of those counts and allegations was declared. At appellant's second trial, the jury found him guilty of first degree murder, burglary, and attempted robbery, and found the gun enhancements true. The jury did not find the special circumstance allegation true.

The court sentenced appellant to 25 years to life for the murder and a consecutive collective term of four years, four months for the other crimes.

***Direct Appeal***

On direct appeal, appellant challenged the trial court's refusal to instruct on second degree murder, voluntary manslaughter, and involuntary manslaughter. In rejecting this challenge, we stated: "The jury was instructed concerning first degree felony murder and first degree felony murder based upon aiding and abetting. The prosecution of the case was based on evidence that [Armijo] was killed by appellant's companion during the attempted commission of a robbery and hence was first degree murder under the felony-murder rule. [¶] . . . [¶] Under the People's theory of the case, appellant was guilty of first degree murder under the felony-murder rule or no crime at all. The prosecution's evidence showed that appellant and Stinson went to the home of Debbie and [Armijo] with the intent to rob them of their drugs. During the attempted robbery, [Armijo] was

4

murdered by Stinson. If the jury accepted the defense theory of the case that no robbery was intended or attempted, then the felony-murder rule would not apply and appellant would not be guilty of murder in any degree. The prosecution did not proceed on any theory other than felony murder. There was no evidence presented in the case on which the jury could have returned a verdict of second degree murder or manslaughter." (*People v. Grajeda* (Apr. 8, 1983, 2d Crim. No. 41516) [nonpub. opn.].

We also rejected appellant's contention that the murder weapon should have been suppressed. In our discussion of that issue, we listed the facts asserted in the affidavit supporting the search warrant of Stinson's parents' home, where the weapon was found two days after the incident. Those facts included appellant's arrest with Stinson at Stinson's apartment shortly after the murder; statements appellant made in the presence of a confidential informant, including identifying the murder weapon as a .357 Magnum and expressing disbelief that the police failed to recover it at the time of the arrests (it was "hidden" under a bandana in Stinson's dining room); witness descriptions of the gun; and Stinson's mother cleaning out Stinson's apartment two days after the arrest. (*People v. Grajeda* (Apr. 8, 1983, 2d Crim. No. 41516) [nonpub. opn.].)

We affirmed the judgment of conviction. (See *People v. Grajeda* (Apr. 8, 1983, 2d Crim. No. 41516) [nonpub. opn.].

**Resentencing Petition**

***Petition and Briefing***

On March 12, 2019, appellant filed a form petition for resentencing under section 1170.95. The trial court appointed counsel for appellant and directed the prosecution to respond to appellant's petition.

5

In its opposition, the prosecution argued that appellant was ineligible for relief under section 1170.95 because he was a major participant who acted with reckless indifference to human life under the relevant case law, including *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Citing our appellate opinion, which it attached as an exhibit,[3] the prosecution argued that appellant's role in the crime "place[d] him high on the culpability spectrum" because he planned and initiated the robbery, used a loaded firearm as a "show of force" during the struggle to enter Armijo's home, was present at the scene when Armijo was killed, ignored Stinson's query about whether Stinson should shoot Armijo, and fled the scene immediately without rendering aid to Armijo.

In his reply, appellant argued that he was not a major participant under *Banks* and did not act with reckless indifference under *Clark* because there was no evidence of planning; there was no evidence that appellant supplied the firearms, which appellant conceded he used and fired; there was no evidence of increased risk to human life or knowledge that

---

[3] The prosecution also attached transcripts of appellant's sentencing hearing and a 2003 parole board decision denying appellant's request for parole. The sentencing transcript includes a brief exchange in which appellant's counsel disputed the probation report's allegation that appellant was affiliated with a gang; no gang allegations were included in the information or tried at trial. The trial court stated that it would not consider the alleged gang affiliation when sentencing appellant. The relevance of the parole board hearing is unclear; it details discipline and convictions appellant suffered in prison, as well as alleged gang affiliation, but does not shed light on the underlying crime or convictions.

6

Stinson was inclined to use excessive violence; appellant attempted to abandon the crime before Stinson fired the fatal shot; appellant made clear he only intended to rob, not kill, and there was no evidence he heard what Stinson said; and he and Stinson left Debbie to assist Armijo. Appellant also pointed to the jury's rejection of the robbery-murder special circumstance.

### *Hearing*

The court heard appellant's petition on October 26, 2020. The prosecutor largely conceded that appellant made a prima facie showing of eligibility for relief and asserted that he was "okay with the court going into a full blown O.S.C. hearing." Appellant's counsel raised no objection. The court noted that the prosecutor bore the burden of proving beyond a reasonable doubt that appellant was ineligible. However, it allowed appellant's counsel to argue first and to have the "last word." Neither side presented evidence beyond that attached to the briefs.

Appellant's counsel conceded that appellant "was probably involved in some way in the planning" of the offense, given that appellant "made the phone call that set the robbery up." However, he argued there was no evidence that appellant provided the guns, which "were in Mr. Stinson's possession" after the crime. Counsel also asserted there was no evidence that appellant knew Stinson was violent, or heard Stinson ask, "Should I shoot him?" Counsel argued that appellant was "trying to abandon the crime" when Stinson asked about shooting Armijo, and Stinson shot so quickly that there was nothing appellant could have done to prevent the incident. In response to questions from the court, appellant's counsel acknowledged that appellant brought a gun with him to the scene, and discharged the gun during the scuffle at the door. Counsel characterized

7

appellant's shot as either "a warning shot to stop the victim from resisting," or "an accidental discharge during the struggle," and emphasized that appellant did not attempt to hurt Armijo or Debbie after that point.

The prosecutor agreed that appellant had at least some role in planning the crime. He also characterized appellant as the "leader" during the crime: "he was the one in charge and Stinson was there to assist him." The prosecutor pointed to Stinson's query about whether to shoot Armijo, and argued that appellant "basically gave the green light to Stinson to shoot and kill the victim" by remaining silent rather than telling Stinson not to shoot. The prosecutor also argued that appellant should have known through "common sense" that the armed robbery would be dangerous, particularly where the intended target was a drug dealer at a drug house who was "likely going to be armed with a weapon as well." The prosecutor added that appellant was "committing a crime with a fellow gang member, which . . . adds to the awareness of the petitioner knowing that the crime was dangerous." The prosecutor also suggested that appellant's conviction for assault showed that he discharged the firearm intentionally, and pointed out that he fled with Stinson rather than aiding Armijo.

The prosecutor asserted that the duration of the crime evinced reckless indifference, as Armijo and Debbie were "held at gunpoint for a substantial period of time." The prosecutor conceded there was "no direct evidence" that appellant and Stinson previously committed a crime together, but again asserted that "they were gang members of the same gang." The prosecutor also argued that appellant "had to have known" that Stinson was capable of murder when Stinson explicitly inquired

8

about shooting Armijo, but appellant nevertheless failed to take steps to prevent the shooting. The prosecutor further argued that appellant "didn't do anything to minimize the risk during the felony," and instead heightened it by bringing a loaded weapon and failing to respond to Stinson.

In response to the prosecutor's argument, appellant's counsel disputed that the target of the robbery—a drug dealer—made the crime more dangerous than other armed robberies. Counsel asserted that Armijo was a "lower level dealer" who "started an assault" on appellant as soon as appellant came to the door. Counsel also disputed that appellant was the leader, arguing, "we don't know if Mr. Stinson's inquiry as to whether he should shoot was asking for a second opinion or was just, you know, a spontaneous statement . . . ." Counsel further argued that appellant might not have heard Stinson, pointing out that they were outside, in the presence of multiple people, and that appellant was having a conversation with Steve when Stinson made the inquiry. Additionally, counsel challenged the assertion that the crime was of substantial duration; he contended that appellant and Stinson led Armijo and Debbie into the street "within a few seconds" of appellant's gunshot, which the neighbors heard and came outside to investigate.

### *Ruling*

In a written ruling issued November 2, 2020, the court denied the petition. It concluded the prosecution met its burden of proving beyond a reasonable doubt that appellant was a major participant who acted with reckless indifference.

The court first concluded that appellant was a major participant in the crime. It found that appellant played a substantial role in planning the crime, as he initiated the

9

incident by calling Armijo, went to Armijo's home with Stinson while Armijo was asleep, and forced his way into the residence. The court also found that appellant brought a loaded firearm to the residence, pointed it at Armijo and Debbie, and fired the weapon inside the home. In considering appellant's awareness of the danger posed by the crime, the court reiterated that appellant went to Armijo's house at night, armed, and accompanied by an armed companion. It also noted, "there was a reference to gang membership in the transcript." The court found that appellant was present when the shooting occurred, and "did nothing to prevent the murder or assist the victim such as saying NO to the question asked by the codefendant." The court also found that appellant fled with Stinson immediately following the shooting and did not render aid to Armijo.

The court also concluded that appellant acted with reckless indifference to human life during the crime. It found that appellant used his weapon to force his way into the victims' home, fired his weapon inside, and then led the victims into the street, where he remained for the duration of the incident. The court noted that "no evidence was adduced that Petitioner made any effort to limit the duration of the interaction between the parties nor minimize the risk thereto." The court considered whether appellant had "reason to trust his cohorts to be peaceable," a question it answered by finding that appellant and Stinson were both armed, and "both were apparently gang members." Finally, the court reiterated that appellant "remained mute" rather than tell Stinson not to shoot Armijo, and "did absolutely nothing to save the life of the victim."

## DISCUSSION

**Senate Bill 1437 and Section 1170.95**

Senate Bill No. 1437 (Stats. 2018, ch. 1015; SB 1437) eliminated natural and probable consequences liability for aiders and abettors of murder and restricted the scope of the felony murder rule by amending sections 188, subdivision (a)(3) and 189, subdivision (e).[4] (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3) now bars the imputation of malice to a person who has merely participated in a crime, while section 189, subdivision (e) allows felony murder liability only when a person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(3).)

SB 1437 also added section 1170.95, creating a procedure for people previously convicted under one of the now-barred theories to file a petition seeking resentencing.  (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  A facially adequate petition entitles a petitioner to the appointment of counsel and a response from the prosecution.  (§ 1170.95, subds. (b)(1), (c); *Lewis*, *supra*, 11 Cal.5th at p. 970.)  The trial court then holds a hearing to determine if the petitioner made a prima facie case for relief. (§ 1170.95, subd. (c).)  If so, the court must issue an order to show cause (the O.S.C. to which the prosecution here referred) why

---

[4]     Senate Bill No. 775 (Stats. 2021, ch. 551), effective January 1, 2022, "[c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories."

11

relief should not be granted.  (*Ibid.*; *Lewis, supra,* 11 Cal.5th at p. 971.)  At the show cause hearing, the prosecution must prove beyond a reasonable doubt that the petitioner is guilty of murder, attempted murder, or manslaughter under amended sections 188 and 189.  (§ 1170.95, subd. (d)(3).)  Both the prosecution and the petitioner are permitted to "offer new or additional evidence." (*Ibid.*)  The trial court acts as an independent factfinder and determines whether the prosecution has met its burden.  (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 (*Ramirez*).)

We review the trial court's factual findings under the substantial evidence standard.  (*Ramirez, supra,* 71 Cal.App.5th at p. 985.)  We view the record in the light most favorable to the judgment and determine whether it contains substantial evidence from which a reasonable trier of fact could find the petitioner guilty of murder beyond a reasonable doubt.  (*Ibid.*)

**Major Participation and Reckless Indifference**

The United States Supreme Court has twice considered the degree of conduct and mental state required to impose the death penalty on non-killers convicted of murder under a felony murder theory.  These two cases, *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*) "collectively place conduct on a spectrum, with felony-murder participants eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions."  (*Banks, supra,* 61 Cal.4th at p. 794.)

*Enmund* lies at one end of the spectrum.  Although defendant Enmund identified a robbery victim, drove armed confederates to the victim's house, acted as a getaway driver, and helped dispose of the weapons, the Court found him ineligible for

12

the death penalty because he did "'not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.'" (*Banks*, *supra*, 61 Cal.4th at p. 799, quoting *Enmund*, *supra*, 458 U.S. at p. 797.) *Tison* lies at the other. There, the Supreme Court considered whether the death penalty could be imposed on two brothers who broke their father and his cellmate out of prison using numerous weapons and then, in their ensuing escape, carjacked and robbed a family that their cohorts ultimately killed. (See *Tison*, *supra*, 481 U.S. at pp. 138-142.) *Tison* held that the brothers constitutionally could be subject to the death penalty because their "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." (*Id.* at p. 158.)

*Tison*'s holding was directly incorporated into section 190.2, subdivision (d), which governs special circumstance murder and was incorporated into section 189, subdivision (e)(3) by SB 1437. Accordingly, "the standard under section 189, subdivision (e)(3) for holding . . . a defendant [who was not the actual killer] liable for felony murder is the same as the standard for finding a special circumstance under section 190.2(d), as the former provision expressly incorporates the latter." (*In re Taylor* (2019) 34 Cal.App.5th 543, 561.) Death penalty cases interpreting section 190.2, subdivision (d), including *Banks*, supra, 61 Cal.4th 788 and *Clark*, supra, 63 Cal.4th 522, thus control the inquiry here.

The California Supreme Court has clarified that *Enmund* and *Tison* "establish that a defendant's personal involvement [in the crimes] must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder such as

13

Earl Enmund." (*Banks*, *supra*, 61 Cal.4th at p. 802.) That is, he or she must have been a "major participant" in the crime, under the totality of the circumstances. (*Id.* at p. 803.) *Banks* identified several considerations relevant to the major participant inquiry: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*Ibid.*)

To determine whether a defendant acted with reckless indifference to human life, we "look to whether a defendant has "'knowingly engag[ed] in criminal activities known to carry a grave risk of death.'" [Citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 801.) "The defendant must be aware of and willingly involved in the violent manner in which a particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Ibid.*) A defendant's degree of participation in the crime also can affect the reckless indifference inquiry; "the greater the defendant's participation in the felony

14

murder, the more likely that he [or she] acted with reckless indifference to human life." (*Tison*, *supra*, 481 U.S. at p. 153.) Although "there are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life," such as "'the manufacture and planting of a live bomb,'" armed robbery is not among them. (*Clark*, *supra*, 63 Cal.4th at p. 615, quoting *Banks*, *supra*, 61 Cal.4th at p. 810, fn. 9.)

In *Clark*, *supra*, 63 Cal.4th at pp. 618-622, the California Supreme Court established a five-factor test for whether a defendant acted with reckless indifference to human life. As with the factors relevant to major participation, no one factor is necessary, nor is any necessarily sufficient. The first factor is the defendant's knowledge of weapons, and use and number of weapons. (*Id.* at p. 618.) "The mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life." (*Ibid.*) However, it may be "significant" if a defendant personally uses a weapon during the crime. (*Ibid.*) The second factor is whether the defendant was physically present at the crime scene and whether he or she had opportunities to limit the crime or aid the victim(s). (*Id.* at p. 619.) A defendant's presence may be particularly significant where "the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force." (*Ibid.*) The third factor is the duration of the felony; crimes of longer duration present greater risk of violence and therefore evince more reckless indifference. (*Id.* at p. 620.) "Where a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of

15

perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation omitted], possibly culminating in murder." (*Ibid.*) The fourth factor is the defendant's knowledge of his or her coparticipants' likelihood of killing. (*Id.* at p. 621.) A defendant who knows a coparticipant previously has used lethal force is more culpable than one unaware of a coparticipant's propensity for violence. (*Ibid.*) The fifth factor is whether the defendant made any efforts to minimize the risk of violence. (*Ibid.*) Such efforts may include planning the crime to occur at a time or location where bystanders are unlikely to be present, or using unloaded or minimally loaded firearms. (See *id.* at pp. 621-622.)

Both the "magnitude of the objective risk of lethal violence and a defendant's subjective awareness of that risk" are relevant to the reckless indifference inquiry. (*Clark, supra*, 63 Cal.4th at p. 623.) "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to demonstrate reckless indifference to human life. Instead, "knowingly creating a 'grave risk of death'" is necessary to establish the requisite mindset. (*Banks, supra*, 61 Cal.4th at p. 808.) "'[T]he fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677, quoting *Banks, supra*, 61 Cal.4th at p. 808 [alteration in original].) "The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and must then consciously disregard "the significant risk of death his or her actions create." (*Banks, supra*, 61 Cal.4th at p. 801.)

16

**Analysis**

Appellant contends that substantial evidence does not support the court's findings that he was a major participant who acted with reckless indifference. We disagree.

Substantial evidence supports the trial court's conclusion that appellant was a major participant in the crimes leading to Armijo's murder. The first *Banks* factor is the role the defendant played in planning the crime. (*Banks*, *supra*, 61 Cal.4th at p. 803.) As appellant conceded below and acknowledges here, he set the crime in motion by calling Armijo and Debbie, then driving to and forcing his way into their home. This factor points toward major participation. The next factor, the role the defendant played in supplying or using lethal weapons (*ibid.*), points in the same direction. Appellant brought Stinson with him, and both men were armed with loaded firearms. Appellant and Stinson both brandished their guns to gain entry into the home, and appellant fired his weapon when a scuffle ensued. Both men also used their weapons to lead Armijo and Debbie into the street, away from the stash of drugs they purportedly sought. Regardless of who supplied the weapons, appellant clearly was aware of their presence and had a role in using them. (*Ibid.*)

The third *Banks* factor is the defendant's awareness of "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants." (*Banks*, *supra*, 61 Cal.4th at p. 803.) Appellant knew Armijo and Debbie had drugs in their home, and "a home invasion robbery of a [heroin] dealer" is "not a garden-variety robbery." (*In re McDowell* (2020) 55 Cal.App.5th 999, 1011 (*McDowell*).) "The potential for it to turn violent was obvious" (*ibid.*), given that appellant knew he and Stinson were both armed with loaded

17

firearms, which they trained on their victims from the moment they forced their way into the victims' home. Appellant is correct that there was no evidence that Stinson had a propensity for violence, or that appellant was aware of such propensity, but that is only one part of the awareness inquiry. We also agree with appellant that the court's finding that appellant and Stinson were gang members was "entirely speculative." Moreover, a shooter's gang membership does not demonstrate a propensity to commit lethal violence. (See *Banks*, *supra*, 61 Cal.4th at pp. 810-811.) Despite the lack of support for this particular finding, appellant's overall awareness of the potential for violence is clear from the record and supports a finding that he was a major participant.

The fourth and fifth *Banks* factors also support the finding that appellant was a major participant. The fourth factor examines whether the defendant was present at the killing, in a position to facilitate or prevent the murder, and whether his or her actions or inaction played a role in the death. (See *Banks*, *supra*, 61 Cal.4th at p. 803.) Even according to his own testimony, appellant was present when Armijo was shot, and fled the scene as soon as he saw him "laid out."[5] Appellant claims there was no evidence that he heard Stinson ask about shooting Armijo, but presumably other witnesses at the scene did; those statements would not be in the record otherwise. It is certainly reasonable to infer that appellant, the person to whom Stinson most likely would be speaking, also heard him, particularly since

---

[5] Despite this, appellant's opening brief asserts that "[t]here was no evidence that appellant was aware that Armijo was badly injured or even shot," and "no evidence that appellant could have done anything to help Armijo after Stinson shot him."

appellant was able to hear Debbie on the telephone and when she spoke to him at the door. Even if appellant was not in charge, he certainly could have said "no" to Stinson to at least reduce the risk that Stinson would shoot. The fifth factor asks what the defendant did following the use of lethal force. (*Banks*, *supra*, 61 Cal.4th at p. 803.) There is no dispute here that appellant fled the scene with Stinson. He also stayed with Stinson afterward; both he and Stinson were arrested in Stinson's apartment, and appellant knew where the gun was "hidden." The court did not err in concluding appellant was a major participant.

Substantial evidence also supports the court's conclusion that appellant acted with reckless indifference toward human life. The first *Clark* factor considers the defendant's knowledge that weapons would be present at the crime, as well as their number. (*Clark*, *supra*, 63 Cal.4th at p. 618.) Here, appellant at the very least knew that he was carrying a loaded firearm. He became aware that Stinson had a gun, at the very latest, when Stinson brandished the weapon to gain entry to the victims' home. "A defendant's *use* of a firearm, even if the defendant does not kill the victim. . . can be significant to the analysis of reckless indifference to human life." (*Ibid.* (emphasis in original).) Appellant used his firearm during or proximate to the indoor struggle with the victims, indicating disregard for their safety. The second *Clark* factor, also a *Banks* factor, is the defendant's physical presence at the scene and opportunities to restrain the crime and aid the victim. (*Id.* at p. 619.) As discussed above, appellant was present the entire time, failed to take even the simple step of answering Stinson's query, and fled the scene immediately after the shooting. These facts suggest reckless indifference toward the victims and their safety.

Moreover, they also dovetail with the third *Clark* factor, the duration of the felony, and the fifth, efforts to minimize the risk of violence. (*Clark*, *supra*, 63 Cal.4th at pp. 620, 621-622.) The record here is silent as to the duration of the felony; we know only that the crime started at Armijo and Debbie's front stoop, moved inside for a time, and then "later" moved into the street, where several people had gathered. However, despite appellant's stated intent to obtain drugs, he and Stinson led the victims away from their stash, into the street, at gunpoint. Several neighbors, including Armijo's brother Steve, came outside; instead of waving the bystanders away or retreating into the house, appellant conversed with Steve and placed everyone in the area in danger by ignoring Stinson's questions and continuing brandish a loaded weapon. Unlike the defendant in *Clark*, who planned a store robbery after closing time to minimize the risk to store employees, appellant's actions increased the risks to the victims and innocent bystanders at every turn. (See *id.* at pp. 620-621.) Appellant asserts that the shooting "appeared to be impulsive," but Stinson asked at least twice whether he should shoot before actually doing so. Appellant also asserts that there was no evidence that he heard Stinson, but we reject that assertion for the same reasons discussed above.

The final *Clark* factor is the defendant's knowledge that his or her cohort is likely to use lethal force. (*Clark*, *supra*, 63 Cal.4th at p. 621.) Such knowledge may be obtained prior to the crime, or may occur during the felony. (*Ibid.*) As discussed above in connection with the similar *Banks* factor, appellant is correct that there was no evidence that Stinson had a propensity for violence, or that appellant was aware of such propensity prior to the crime. However, once Stinson led Armijo into the street at

gunpoint, and continued to train his weapon on Armijo, appellant should have become aware "that the situation could quickly turn deadly." (*McDowell*, *supra*, 55 Cal.App.5th at p. 1014.)

This case is analogous to *People v. Bascomb* (2020) 55 Cal.App.5th 1077 (*Bascomb*). In *Bascomb*, defendant Bascomb and codefendant Blue, both armed with guns, forced their way into the apartment of marijuana dealer Moser. (*Bascomb*, *supra*, 55 Cal.App.5th at p. 1081.) Moser, his girlfriend Hoover, and his two roommates, Flores and Lind, were all home at the time. While Hoover watched from the bathroom, Bascomb held Flores at gunpoint for several minutes; Blue entered Moser's room and shot him after a brief struggle. Bascomb and Blue then "quickly left together." (*Ibid.*) Bascomb was found guilty of first degree murder under a felony murder theory, and later sought resentencing under section 1170.95. (*Id.* at pp. 1083-1084.) The trial court denied the petition after holding a show cause hearing; it found that Bascomb was a major participant who acted with reckless indifference. (*Id.* at p. 1084.)

Division Two of the Fourth District Court of Appeal affirmed. Given the similarity between the actions of Bascomb and appellant, the Fourth District's concise analysis of the *Banks* and *Clark* factors bears repeating here: "Bascomb was willingly involved in the violent manner in which the robbery took place. . . . [H]e cooked up a plan to break into the home of a known drug dealer while they were home and to use force, including firearms, to steal the dealer's product. Moreover, Bascomb and Blue not only pushed their way into the home armed, but they forced one victim to the ground and used their guns to threaten the residents and keep them pinned down during the duration of the robbery. That means Bascomb didn't just watch without

21

intervening as his accomplice accosted the murder victim in his bedroom [*sic*], he used his weapon to keep the other victims at bay and thereby actively enabled the murder. Nor did he help the victim once he had been shot, but instead fled. We agree with the People that this sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life." (*Bascomb*, *supra*, 55 Cal.App.5th at p. 1089.) The court continued, "if [Bascomb and Blue] had wanted to avoid a confrontation, they could have done so when someone answered their knock at the door. Instead, they immediately pushed their way in and forced the person who answered to the floor. This strongly suggests confronting people inside the home was part of the plan. As the trial court fairly concluded under this evidence, '[t]his was not a robbery of a convenience store, or a person on the street in which resistance, if any, would be slight, and armed resistance likely nonexistent. This was the planned, armed robbery of a known drug dealer at his residence.' This conclusion is amply supported by the record." (*Id.* at p. 1090.) The same is true here.

Like the *Bascomb* court, "'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard' of culpability required to support a felony murder conviction." (*Bascomb*, *supra*, 55 Cal.App.5th at p. 1090.) At the very least, none of the cases appellant has cited have granted section 1170.95 relief on facts similar to those here. The trial court properly denied appellant's petition. There is sufficient evidence in the record to sustain its findings that appellant was a major participant in the attempted robbery of Armijo and acted with reckless indifference to human life.

## DISPOSITION

The order denying appellant's section 1170.95 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.